Macomber, J.
The fifth and second grounds of the demurrer come respectively under subdivisions six and seven of section 488 of the Code of Civil Procedure, and the particular objection or defect relied upon is required (by § 490) to be specifically pointed out. In respect to this requirement of the Code the demurrer is wholly defective. As to the first ground of the demurrer, it does not appear upon the face of the complaint that there was a third inspector of election, nor does it appear therein who were the owners and transferees of promissory notes alleged to have been executed by the defendant Aronson. While, therefore, a different argument might have been based upon the demurrer which is addressed alone to the defect of parties defendant in respect to the non-joinder of the directors of the defendant corporation, yet the demurrer must, as a whole, fail because that portion of it, even though good, cannot be sustained unless the whole of that ground of the demurrer is properly taken; otherwise the court would have to sustain one ground of the demurrer in part, and overrule it in part, which is clearly not contemplated by the provisions of the Code of Civil Procedure. Moreover, what interest has this defendant in having the other defendants, for whose absence he has instituted this ground of the demurrer, brought into the case? In order to sustain a demurrer for a defect of parties it must appear that the party demurring has an interest in having the omitted parties joined, or that he is prejudiced by the non-joinder. Wooster v. Chamberlain, 28 Barb., 602; Littell v. Sayre, 7 Hun, 485; Moore v. Hegeman, 6 id., 290; Sanders v. Village of Yonkers, 63 N. Y., 489.
The second ground stated in the demurrer is also equally fatally defective. Here, too, the rule requires the objection and suposed defect to be particularly and specificafiy pointed out by the demurrer itself. This thing the demurrer has failed to do. It states that there are several and distinct *104 causes of action set forth in the complaint which do not affect the defendant, but it does not specify what they are. It alleges that several causes of action therein stated do not belong to any one of the sub-divisions of section 484 of the Code of Civil Procedure, but it does not specify them. It also alleges that causes of action upon claims not arising out of the same transaction or transactions connected with the same subject of action are included in the complaint, but these, too, are not particularly pointed out. It also alleges that legal and equitable actions not referring to the same persons or subject-matter are united in the complaint, but wherein they are thus united, and what particular actions are supposed to be equitable and what legal, it does not mention.
The third, fourth and fifth grounds of the demurrer may be considered together, and may be treated as a proper form in which to raise the question that upon the face of the complaint it appears that the plaintiff has not stated facts sufficient to constitute a cause of action against the demurring defendant.' This ground of the demurrer wholly misapprehends the scope and legal bearings of the complaint. The complaint, which is quite elaborate, first mentions this defendant in sub-division 5& thereof, where it is alleged that on the 16th day of August, 1884, the defendant Rudolph Aronson “also caused to be transferred to. ' the defendants Isaac Dreyfuss, Albert Aronson, James H. Miller, Samuel Benzer and Alfred Wolf, the balance of the shares of stock held or claimed to have been held and owned by the said Rudolph Aronson.” Thereupon, it proceeds to allege that the defendants above named, acting in concert with the defendant Rudolph Aronson and the defendants in league with him, and for the purpose of aiding and assisting Rudolph Aronson and the other defendants in misappropriating the funds and stock of the defendant corporation as in the complaint set forth, accepted and received the said transfer of stock, and thereupon, as part of then-scheme and conspiracy to defraud the defendant corporation and its stockholders as in the complaint alleged, and aid and assist Rudolph Aronson to continue himself in power, these defendants; excepting Albert Aronson, executed and delivered to Rudolph Aronson proxies authorizing him to vote upon said stock at the September meeting, in such manner as said Rudolph Aronson desired. That these defendants, including Albert Aronson, had knowledge of the manner in which the shares of stock had been issued to . Rudolph Aronson, and that the validity thereof and the right of Rudolph Aronson to hold the same was about to be contested by stockholders of the company, and these defendants received the transfer of stock to them in view of *105 the approaching annual stockholders meeting and election of directors thereat, and for the purpose of anticipating and evading an injunction restraining- Rudolph Aronson from voting at the election upon said stock, and that Rudolph Aronson, with these several defendants, conspired and colluded to accomplish that object. It further alleges that the transfers were colorable merely and were a sham and done for the purpose of aiding Eudolph Aronson in his general scheme of defrauding tho corporation. We have therefore, this defendant introduced in such a manner as to entitle the plaintiff to certain relief provided the facts therein alleged are true.
The action is brought by the plaintiff as one of the stockholders of the defendant company and is instituted in his own behalf and in behalf of all others similarly situated, and it is alleged (p. 64) that the defendant Eudolph Aron-son controlled the majority of the board of directors who are friendly to him, to aid and assist him in illegal acts spread out in the complaint and without whose consent or direction this action could not .be brought. The charge against the demurring defendant is only one of a series of alleged illegal and fraudulent acts of persons composing the majority of the board of directors of the corporation, by which the value of the stock and property of the corporation has been greatly injured, and if these acts are permitted to continue great loss will accrue to the plaintiff and to others similarly situated. It is not necessary to mention in detail the particular charges other than those already mentioned as against this demurring defendant, for the purposes of this decision.
No demand was made upon the officers or directors of the corporation to bring an action of this description, and the question mainly discussed at the argument relates to a supposed barrier against the plaintiff’s further progress, inasmuch as such demand has not been made. The general rule doubtless is that before a stockholder can institute an action which the corporation itself is capable of beginning, but fails to begin, a demand must be made upon the corporation or its officers. Greaves v. Gouge, 69 N. Y., 154; Spencer v. Clark, gen. term, 1st dep’t, Oct. 1885. In the latter case, no demand had been made upon the trustees, neither did it appear that the affairs of the corporation were under the management of any board of officers or trustees indisposed to institute the suit required or make a defense to the mortgage which was then in controversy.
On the other hand, where it is shown by proper allegations that the corporation is mider the control of those who must be defendants in the suit by which alone the proper *106 relief can be had, a demand that such action be brought is not required. Where a fraudulent breach of trust is shown, and it is apparent on the face of the complaint that the corporation cannot move even for the protection of the stockholders who are the cestui que trust of the corporation, then a stockholder may be permitted, without a demand, to seek in his own behalf and in behalf of such ■others as may join him in the action, to undo the fraudulent and unlawful acts of those who have perverted the uses and purposes of the corporation who have despoiled the stockholders of their property. Brewster v Hatch, 10 Abb., N. C., 406; Heath v. Erie Railroad Co., 8 Blatch., 347; The County of Tazewell v. Farmers’ Loan and Trust Co., 12 Fed. Rep., 752.
The interlocutory judgment overruling the defendant’s demurrer should be affirmed, with costs, with leave to the defendant to withdraw the same and answer upon payment of the costs of the demurrer.
Daniels and Brady, JJ., concur.